IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| **STEPHANIE D. ALLEN**,<br><br>                    Plaintiff,<br>v.<br><br>**SALT LAKE COUNTY** and **BRANDON HARTLEY**,<br><br>                    Defendants. | **MEMORANDUM DECISION AND ORDER GRANTING DEFENDANT COUNTY'S MOTION FOR PARTIAL SUMMARY JUDGMENT**<br><br>Case No. 2:22-CV-00705-JNP-JCB<br><br>District Judge Jill N. Parrish<br>Magistrate Judge Jared C. Bennett |

During her employment with Salt Lake County ("Defendant County"), Plaintiff Stephanie Allen was sexually harassed and assaulted by Brandon Hartley ("Defendant Hartley"), Plaintiff's first-line supervisor at the County Sherriff's Office Academy. ECF No. 1-1, at 13. Without disputing these facts, Defendant County seeks summary judgment on Plaintiff's claims for both sex discrimination and retaliation, contesting the applicability of Title VII vicarious liability in this case. *See* ECF No. 35. For the reasons stated herein, Defendant County's motion is granted.

**BACKGROUND[1]**

---

[1] At oral argument, Plaintiff's counsel raised two objections to relevant portions of this recitation of facts. The court finds neither persuasive. First, counsel argued that Plaintiff disputed material facts, including the County's lack of knowledge of Defendant Hartley's relationship with Plaintiff prior to July 26, 2021. The court declines to find a genuine dispute as to this material fact based on Plaintiff's mere belief that the County possessed knowledge of her relationship with Defendant Hartley at an earlier time—particularly because Plaintiff's counsel admitted that Plaintiff's purported belief has no factual basis. Plaintiff could have conducted discovery on this issue, including by filing a motion under Fed. R. Civ. P. 56(d)(2), but she failed to do so. The second issue arises out of Plaintiff's failure to respond to Defendant County's requests for admissions, which were thereby deemed admitted. *See* ECF No. 35-1, at 12 ("Admit you did not successfully complete the firearms testing associated with the Deputy I position."). Plaintiff's counsel attempted to excuse Plaintiff's failure to respond to these discovery requests due to an issue with their service by email. But if there was an issue with service, Plaintiff should have acted to remedy that fact. She did not do so. Even today, the court has been apprised of no details regarding the timeline of the relevant events or of the discussions between the parties regarding the sufficiency of service. Plaintiff could have filed a motion or raised this issue in her opposition to the motion but chose not to. The court therefore declines to step into Plaintiff's shoes and argue on her behalf that there exists some basis to set aside these admissions.

*Plaintiff's Employment Application and Required Certification*

In April 2021, Plaintiff applied for an open position at the Salt Lake County Sheriff's Office. ECF No. 36, ¶ 3. For Plaintiff to receive employment in her preferred Deputy II position, she was required to obtain basic correctional officer ("BCO") certification by passing a physical test and medical exam and completing a 13-week Training Academy through Utah Police Officer Standards and Training ("POST"). *Id.*, ¶ 4. Defendant Hartley was the first-line supervisor assigned to Plaintiff in her POST Academy class. ECF No. 1-1, at 6.

While Plaintiff was enrolled at the POST Training Academy, Plaintiff's medical providers wrote two letters on her behalf. First, around May 21, 2021, Plaintiff's doctor wrote a letter advising that Plaintiff should avoid running. ECF Nos. 36, ¶ 5; 36-2, at 1. Defendant County responded by placing Plaintiff on restricted duty, which involved a light clerical assignment in lieu of physical training activity. *Id.*, ¶ 6. Second, on July 2, 2021, a cardiology specialist advised that Plaintiff had a cardiac condition and should avoid any exertional activity until Plaintiff could see a specialist to discuss risks associated with heart failure. *Id.*, ¶ 7. Plaintiff acknowledges that her medical conditions rendered her unable to pass the physical test for the BCO certification that was required for the Deputy II position. ECF No. 35-1, at 12.

Despite Plaintiff's inability to obtain BCO certification, she performed well at POST, obtaining her special functions officer certification and passing all written BCO certification requirements. ECF No. 36, ¶ 8. Defendant County placed Plaintiff on restricted duty and granted her another opportunity to obtain a medical release to take the physical test to qualify for the Deputy II position. *Id.*, ¶ 9. Instead of doing so, Plaintiff applied for and was conditionally offered a Deputy I position in the County Sheriff's Office, which did not require BCO certification, but did require a firearms certification. *Id.*, ¶¶ 10–11. When Plaintiff failed to obtain her firearms

certification, however, she chose to voluntarily resign from the County Sheriff's Office. *Id.*, ¶ 12; ECF No. 36-5. Plaintiff then obtained an accounting position with Defendant County and later accepted reassignment to a jail clerk role. *Id.*, ¶¶ 12–13.

### *Defendant County's Harassment Policies and Training Procedures*

Defendant County has a written zero-tolerance policy against harassment, discrimination, retaliation, and other workplace misconduct. ECF Nos. 38, ¶ 2; 38-1. Defendant County's policy permits employees who believe they have been subject to harassment, discrimination, or retaliation to report such misconduct to several designated individuals, including but not limited to any supervisor in the employee's chain of command. *Id.*, ¶ 3. The policy also directs employees who face such challenges in the workplace to file a complaint as soon as possible, and within 30 days of becoming aware of harassment, discrimination, or retaliation. *Id.*, ¶ 5. County policies are disseminated to all employees and are also made publicly available through a county website. *Id.*, ¶ 4. Defendant County also provides all its employees with an additional specialized training on its policy, which explains how to recognize, prevent, and report sexual harassment. *Id.*, ¶ 6. Plaintiff completed this specialized training on June 29, 2021. ECF Nos. 38, ¶ 7; 38-2.

In addition to Defendant County's policies and procedures, County Sheriff's Office Academy cadets are separately subject to Pre-Service Academy Rules and Regulations, which are disseminated to cadets during training, and which require any cadet who experiences harassment to report such an incident immediately. ECF No. 36, ¶¶ 20, 24; 36-8; 36-9. Plaintiff acknowledged her review of and agreement to the Pre-Service Academy Rules and Regulations within her first week of County employment in April 2021. *Id.*, ¶¶ 21 26; *see also* ECF No. 36-10.

### *Internal Investigation into Defendant Hartley*

On June 27, 2021, Sergeant Kenneth Fredrickson reported to Lieutenant Kenneth Garcia

3

that he had overheard a conversation between "two [unidentified] female employees discussing potentially inappropriate contact from Defendant Hartley." ECF No. 37, ¶ 2. Lt. Garcia promptly placed Defendant Hartley on administrative leave and opened an administrative investigation case, pursuant to which Chief Deputy Matthew Dumont opened an internal affairs investigation. *Id.*, ¶ 3; ECF No. 37-1. In the course of this investigation, Defendant County staff interviewed Plaintiff, who then disclosed for the first time that she had inappropriately been personally and sexually involved with Defendant Hartley. ECF No. 35-1, at 12. Defendant County was unaware of any inappropriate contact between Defendant Hartley and Plaintiff prior to that time. ECF No. 36, ¶ 15. In the course of Plaintiff's initial interview and two follow-up phone calls, Plaintiff disclosed that she initially had a consensual sexual relationship with Defendant Hartley before he later became threatening and abusive towards her. *Id.*, ¶¶ 17–21. Facing termination at the close of this investigation, Defendant Hartley resigned from his employment with Defendant County. *Id.*, ¶ 16; ECF No. 36-6.

In October 2022, Plaintiff sued Defendant Hartley and Defendant County in state court, alleging seven claims, including Title VII discrimination and retaliation claims against all defendants. ECF No. 1-1, at 13–16. Defendant County removed the action to this court based on the federal questions raised by Plaintiff's amended complaint. ECF No. 1. Now, Defendant County seeks summary judgment on Plaintiff's two Title VII claims, asserting that it cannot be held vicariously liable under that statute for Defendant Hartley's alleged misconduct.[2]

---

[2] At oral argument, counsel for Defendant County explained that it did not move for summary judgment on Plaintiff's state law claims because it believed that if the court granted its motion for summary judgment on Plaintiff's federal claims, the court would lack continuing subject matter jurisdiction and remand the case to state court. This court is cognizant of its duty to assure itself of its subject matter jurisdiction. *See Citizens Concerned for Separation of Church & State v. City & County of Denver*, 628 F.2d 1289, 1297, 1301 (10th Cir. 1980). At this stage, however, the court does not find that the combination of Defendant Hartley's default and Defendant County's obtainment of summary judgment on Plaintiff's federal claims would deprive the court of continuing subject matter jurisdiction. Courts have described the entry of default as a "ministerial step" that "does not turn on the merits of the claim[,]" and that therefore does not foreclose the exercise of supplemental jurisdiction over related state law claims. *See, e.g., Kegun Chen v.*

**SUMMARY JUDGMENT STANDARD**

Under Federal Rule of Civil Procedure 56(a), "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." A defendant seeking summary judgment based on its assertion of an affirmative defense must therefore "demonstrate that no disputed material fact exists regarding the affirmative defense asserted." *Helm v. Kansas*, 656 F.3d 1277, 1284 (10th Cir. 2011) (quoting *Hutchinson v. Pfeil*, 105 F.3d 562, 564 (10th Cir. 1997)). To oppose a defendant's well-supported motion, a plaintiff has the burden to "demonstrate with specificity the existence of a disputed material fact." *Id.* "In determining whether summary judgment is proper, we view the evidence in the light most favorable to the non-moving party." *Id.* (citing *Duvall v. Georgia-Pacific Consumer Prods., L.P.*, 607 F.3d 1255, 1259 (10th Cir. 2010)).

**ANALYSIS**

Defendant County does not dispute the central facts underlying Plaintiff's amended complaint: that Plaintiff was conditionally employed by Defendant County; that during the course of Plaintiff's conditional employment she underwent training at POST; that Defendant Hartley was Plaintiff's first-line supervisor at POST; that Defendant Hartley engaged in inappropriate conduct, including the sexual harassment or assault of Plaintiff; and that Plaintiff subsequently resigned from county employment after failing to obtain the certifications required for the positions for which she had been conditionally hired. "[T]he County does not condone Defendant Hartley's conduct." ECF No. 35, at 2. Yet it maintains it "cannot be held liable" for his harassment of

---

*Oceanica Chinese Rest., Inc.*, 2018 U.S. Dist. LEXIS 140925, at *10 (E.D.N.Y. Aug. 17, 2018) (quoting *City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 128 (2d Cir. 2011) ("[E]ntry of default is a ministerial step to be performed by the clerk of court.")); *see also Morin v. Empiyah & Co.*, 389 F. Supp. 2d 506, 511 (S.D.N.Y. 2005) (finding that even the entry of default judgment does not necessarily amount to the dismissal of federal claims for purposes of § 1367(c)(3) supplemental jurisdiction). If Defendant County disagrees with this assessment or wishes to seek remand of the remaining state law claims to state court, it may file a motion and articulate the basis for such action.

Plaintiff and it therefore seeks summary judgment on Plaintiff's harassment and retaliation claims arising under Title VII, 42 U.S.C. § 2000e-2(a)(1). The court grants Defendant County's motion, finding that Plaintiff lacks a basis to hold the County vicariously liable for Defendant Hartley's alleged misconduct.

## I.    DISCRIMINATION

Workplace sexual harassment of the type that Plaintiff alleges is one form of actionable Title VII sex discrimination. *See Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 672 (10th Cir. 1998); *Meritor Sav. Bank v. Vinson*, 477 U.S. 57, 72-73 (1986). Because the Plaintiff's harasser was Defendant County's supervisory employee, the County faces potential vicarious liability for Defendant Hartley's conduct. *See Vance v. Ball State Univ.*, 570 U.S. 421, 428 (2013) ("In *Ellerth* and *Faragher*, . . . we held that . . . where the harassing employee is the plaintiff's 'supervisor[,]' . . . an employer may be *vicariously* liable for its employees' creation of a hostile work environment.") (emphasis in original).

Title VII vicarious liability may arise in either of two circumstances. First, "[i]f the supervisor's harassment culminates in a 'tangible employment action,' the employer is strictly liable for sex discrimination[.]" *Kramer v. Wasatch County Sheriff's Office*, 743 F.3d 726, 737 (10th Cir. 2014) (citing *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 762-63 (1998)). Second, absent proof of a tangible employment action, an employer may still be subject to vicarious liability for its supervisory employee's harassment of the plaintiff if "the plaintiff proves the harassment was severe or pervasive," *id.* (citing *Morris v. City of Colo. Springs*, 666 F.3d 654, 663 (10th Cir. 2012)), and "the employer is unable to establish the [*Ellerth/Faragher*] affirmative defense[,]" *id.* (citing *Faragher v. City of Boca Raton*, 524 U.S. 775, 807 (1998); *Ellerth*, 524 U.S. at 765).[3]

---

[3] The parties each omit any discussion of the "severe or pervasive" element of this test in their briefing. The court assumes, without deciding, that Plaintiff's harassment was severe or pervasive. Summary judgment is appropriately

An employer may avoid Title VII vicarious liability by proving the *Ellerth/Faragher* defense's "two necessary elements: (a) that the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior, and (b) that the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise." *See Pinkerton v. Colo. Dep't of Trans.*, 563 F.3d 1052, 1061 (10th Cir. 2009) (internal citation omitted). At trial, the employer bears the burden to prove both prongs by a preponderance of the evidence. *Mallinson-Montague v. Pocrnick*, 224 F.3d 1224, 1228 (10th Cir. 2000) (citing *Faragher*, 524 U.S. at 807–08). On summary judgment, meeting this burden requires the employer to "support its motion with credible evidence . . . that would entitle it to a directed verdict if not controverted at trial." *Anderson v. Dep't of Health & Human Servs.*, 907 F.2d 936, 947 (10th Cir. 1990) (internal quotation marks and citation omitted). Moreover, "[t]he defendant must demonstrate that no disputed material fact exists regarding the affirmative defense asserted" when the evidence is viewed in the light most favorable to the plaintiff. *Helm*, 656 F.3d at 1284.

### A.  TANGIBLE EMPLOYMENT ACTION THEORY OF LIABILITY

First, Plaintiff argues that Defendant County is strictly liable for Defendant Hartley's harassment because his alleged misconduct culminated in a tangible employment action. In the Title VII sex discrimination context, a "tangible employment action" is a "significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Ellerth*, 524 U.S. at 761. Additional examples include "a termination in employment, a demotion evidenced by a

---

granted regardless of this assumption, however, because the court finds that Defendant County adequately proved each element of its *Ellerth/Faragher* defense.

decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices that might be unique to a particular situation." *Id.* (quoting *Crady v. Liberty Nat'l Bank & Trust Co. of Ind.*, 993 F.2d 132, 136 (7th Cir. 1993)). In "most cases[,]" a tangible employment action "inflicts direct economic harm" on the plaintiff. *Id.* at 762. But in other cases, a tangible employment action may be demonstrated in a supervisor "giving an employee 'a less distinguished title [or actions resulting in] a material loss of benefits, significantly diminished material responsibilities, or other indices that might be unique to a particular situation.'" *Kramer*, 743 F.3d at 738–39 (quoting *Ellerth*, 524 U.S. at 761). "However, neither 'a bruised ego' nor a demotion *without* a concurring change in pay, benefits, duties, or prestige in enough." *Id.* at 739 (emphasis in original).

Plaintiff bears the burden to prove that Defendant County is strictly vicariously liable on the basis that Defendant Hartley's misconduct culminated in a tangible employment action. *See Jones v. Needham*, 856 F.3d 1284, 1289 (10th Cir. 2017) (stating an employee may demonstrate Title VII harassment occurred by "prov[ing] that a tangible employment action resulted from a refusal to submit to a supervisor's sexual demands") (quoting *Ellerth*, 524 U.S. at 753). Plaintiff asks the court to find a tangible employment action in either of two factual allegations. First, she alleges that she feared being arbitrarily terminated by Defendant Hartley if she refused to acquiesce to his demands for sex. Second, she alleges that Defendant Hartley promised to falsify records to incorrectly indicate that she had passed the BCO certification's physical fitness test in exchange for continued sexual favors. For the reasons set forth in this section, the court finds that neither allegation suffices to meet Plaintiff's burden of showing that she suffered a tangible employment action. As a result, Defendant County is not subject to strict vicarious liability on Plaintiff's Title VII claims and may proceed to assert its *Ellerth/Faragher* affirmative defense.

### i.    *Plaintiff's General Fear of Termination Theory*

The court first addresses Plaintiff's allegation that she suffered a tangible employment action because she acquiesced to Defendant Hartley's unwanted sexual advances out of fear that he would arbitrarily terminate her employment if she refused to do so. The court assumes that each of Plaintiff's factual allegations are true and does not doubt the sincerity of the fear that she alleges. Yet binding precedents resolutely foreclose this theory of a tangible employment action. *See, e.g., Kramer*, 743 F.3d at 744 ("[W]here threats are made but unfulfilled, the claim should be categorized . . . *not a tangible employment action claim*.") (internal quotation marks and citation omitted) (emphasis added). This was the upshot of the Supreme Court's landmark decision in *Ellerth*: in Title VII cases involving a supervisor's unfulfilled threats, the absence of a tangible employment action necessitates permitting the employer to assert an affirmative defense. *Ellerth*, 524 U.S. at 754. Otherwise, Title VII vicarious liability would become uprooted from the soil of agency law, which would not permit a principal to be held liable for an agent's mere threat to misuse its authority—at least without a closer look into the factual circumstances. The court therefore turns to Plaintiff's second theory of her tangible employment action.

### ii.    *Plaintiff's* **Quid Pro Quo** *Theory*

Plaintiff's second theory of a tangible employment action is that Defendant Hartley promised to falsify records to indicate that she had passed her BCO certification's physical fitness test, despite her inability to do so, in exchange for continued sexual favors. For the reasons explained below, this claim does not constitute a tangible employment action for Title VII purposes.

The paradigmatic Title VII *quid pro quo* harassment case is unlike the present one. Generally, the plaintiff rightly refuses to acquiesce to a superior's demands for sexual favors and

suffers a negative professional consequence as a result. These negative consequences are the most often cited examples of "tangible employment actions": "a termination in employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices that might be unique to a particular situation." *Ellerth*, 524 U.S. at 761. This case presents the question whether the opposite may be true: if a plaintiff *does* acquiescence to a supervisor's coercive demands for sexual favors in exchange for *positive* employment benefits, was there still a tangible employment action?[4]

In the two and a half decades since the Court decided in *Ellerth* and *Faragher*, the circuit courts of appeals have reached diverging views on this question. Both the Second and Ninth Circuits have expressly held that the benefit of job retention, obtained through a coerced exchange for submission to a supervisor's sexual demands, constitutes a tangible employment action. *See Holly D. v. Cal. Inst. of Tech.*, 339 F.3d 1158, 1169 (9th Cir. 2003); *Jin v. Met. Life Ins. Co.*, 310 F.3d 84 (2d Cir. 2002). The D.C. Circuit, on the other hand, has declined to adopt this theory (albeit without ruling on its validity directly). *See Lutkewitte v. Gonzales*, 436 F.3d 248 (D.C. Cir. 2006). Additionally, in *Lutkewitte*, Judge Brown wrote a persuasive concurring opinion, arguing that the Second and Ninth Circuits' approaches are out of line with the agency law theory of Title VII strict vicarious liability underlying both *Ellerth* and *Faragher*. *See id.* at 265 (J. Brown, Concurring).

While the Tenth Circuit has not directly addressed the issue, several decisions from the Tenth Circuit have suggested that to constitute a "tangible employment action," a supervisor's conduct must be directly adverse to the employee's interests. *See Mallinson-Montague*, 224 F.3d

---

[4] In actuality, this question is largely hypothetical. While the court declines to adopt the theory of tangible employment actions that Plaintiff seeks to advance, it also notes that the undisputed evidence in this case demonstrates that there was no such *quid pro quo* resulting in a "positive" employment action. Defendant Hartley never falsified records indicating that Plaintiff had obtained her BCO certification and thereby qualified for the Deputy II position. Instead, Plaintiff voluntarily resigned from the Sheriff's Office after failing to obtain that certification.

at 1231–32 (finding a sex discrimination plaintiff alleged an "*adverse* employment action" that was adequately "significant, material, and tangible" to justify the application of strict vicarious liability) (emphasis added); *Smith v. Cashland, Inc.*, 193 F.3d 1158, 1160 (10th Cir. 1999) ("A defendant-employer may refute such a claim of quid pro quo harassment . . . with proof that no *negative* employment action was taken by the employer[.]") (emphasis added).

Urging the court not to follow this trail of breadcrumbs left behind by the Tenth Circuit, Plaintiff cites *Loudermilk v. Stillwater Milling Co.*, 551 F. Supp. 2d 1281, 1292 (N.D. Okla. 2008), in which she asserts "the Tenth Circuit addressed the situation" at hand, and "reason[ed] that submission to a positive employment action of benefits could qualify as a 'tangible employment action.'" *Id.* at 16. Plaintiff grossly misstates both the facts and the law. This court agrees that Judge Kern's voice on the U.S. District Court for the Northern District of Oklahoma may be persuasive and that his opinion in *Loudermilk* is well reasoned. But contrary to Plaintiff's assertion that Judge Kern "addressed" this unsettled legal question for the entire Tenth Circuit, his opinion is no more binding on this court than a judicial decision from the courts of Memphis or Mozambique. More importantly, Plaintiff misreads the critical conclusion of that decision. She represents that Judge Kern concluded that the Tenth Circuit recognizes the exchange of positive benefits for sexual favors as a tangible employment action. But *Loudermilk* holds the exact opposite. *See Loudermilk*, 551 F. Supp. 2d at 1291–92 ("Tenth Circuit cases indicate that employment actions taken by a harassing supervisor must be 'adverse' in order to satisfy the definition of tangible employment action . . . . The Court is constrained to follow this language[,] . . . and therefore holds that the positive employment actions in this case . . . do not qualify as tangible employment actions[.]").

After reviewing the relevant cases, the court agrees with Judge Kern: Plaintiff's

acquiescence to Defendant Hartley's demand for sexual favors in exchange for his alleged promise to falsify records on her behalf does not qualify as a "tangible employment action" that can subject Defendant County to strict vicarious liability. While the Tenth Circuit has never explicitly held as much in a precedential opinion, its statements in *dicta* consistently indicate that *quid pro quo* harassment claims require a tangible employment action to be adverse to the employee.[5] Moreover, because Title VII strict vicarious liability is justified on the basis that "[t]angible employment actions are the means by which the supervisor brings the official power of the enterprise to bear on subordinates[,]" a supervisory employee *necessarily* acts on the employer's behalf when doling out a "tangible employment action, such as *discharge*, *demotion*, or *undesirable* reassignment[,]" whereas a supervisory employee may or may not be standing in the principal's shoes when offering a *quid pro quo* exchange for an employment *benefit*. *Ellerth*, 524 U.S. at 762–65 (emphasis added). In this case, for example, the court sees no reason to believe that Defendant Hartley was acting within the scope of his duties as a supervisory employee, or acting with actual or apparent authority, when he allegedly promised to falsify business records on Plaintiff's behalf in exchange for sexual favors. Strict vicarious liability, then, makes little sense—for the same reasons first articulated in *Ellerth* itself.

For the foregoing reasons, the court finds that Plaintiff has failed to prove that she suffered a tangible employment action under either theory that she advances. Before proceeding to Defendant County's affirmative defense, however, the court makes brief note of one final

---

[5] One additional point of confusion on this issue under Tenth Circuit law is the fact that "adverse employment actions," which are relevant in the context of Title VII retaliation claims, are defined separately from "tangible employment actions," which are relevant to the Plaintiff's sex discrimination claim. The reasons why these two concepts have become intertangled in our case law is unclear and the court is uncertain as to how to distinguish between an adverse employment action and an adverse tangible employment action. While the court follows the Tenth Circuit's indications that Title VII tangible employment actions must be adverse to the employee, the court would appreciate further appellate clarification of this confusing issue.

consideration relevant to its decision not to subject Defendant County to strict vicarious liability.

### iii.   *Plaintiff Voluntarily Resigned from County Employment*

In *Pinkerton*, the plaintiff alleged that her supervisor conditioned workplace benefits on her "submission to sexual conduct and had her fired when she did not comply." *Pinkerton*, 563 F.3d at 1060 (citations omitted). Despite the *quid pro quo* exchange involving the supervisor's offer of benefits instead of punitive actions, the Tenth Circuit found that this allegation, if proven, could support a jury verdict holding the employer strictly vicariously liable. *Id.* (citing *Hicks v. Gates Rubber Co.*, 833 F.2d 1406, 1413-14 (10th Cir. 1987); *see Conatzer v. Med. Prof'l Bldg. Svcs. Corp.*, 95 F. App'x 276, 279 (10th Cir. 2004) (unpublished)). But there is a critical difference between that case and the present one. In *Pinkerton*, the plaintiff was fired when she did not comply. In contrast here, the Plaintiff was not fired, but instead voluntarily resigned from County employment.[6]

There is significant reason to believe that an employee who voluntarily resigns from employment cannot consequently avail herself of the argument that she suffered a tangible employment action. On the heels of the Court's decision in *Ellerth*, the Tenth Circuit was presented with a case that required it to further define the factual circumstances in which *quid pro quo* harassment may be said to have culminated in a tangible employment action. Without reaching the appeal's merits, the Tenth Circuit noted that an employer could "refute such a claim" of strict vicarious liability for sexual harassment in the workplace "with proof that no negative employment action was taken by the employer, i.e., *that the employee resigned, for example*[.]" *Smith*, 193 F.3d

---

[6] In Plaintiff's brief and at oral argument, she disputed this point, arguing that she was terminated before subsequently accepting alternative employment within county government. But Plaintiff failed to explain how her documented resignation fits within that theory of the case. In any event, whether Plaintiff resigned or was terminated due to her admitted failure to meet the objective job requirements for the Deputy II and Deputy I roles within the County Sheriff's Office is inconsequential since either alternative would foreclose a Title VII action holding her employer vicariously liable for the change in her employment status.

at 1160 (emphasis added). Despite appearing in *dicta*, this statement strongly suggests that an employee in Plaintiff's shoes simply cannot demonstrate that she suffered a tangible employment action after voluntarily resigning from her job.[7] The same is even more true here, where the Plaintiff not only voluntarily resigned, but did so because she had failed to meet the objective qualifications for either position that she sought.

Finally, the fact of Plaintiff's resignation undermines her claim to have suffered a tangible employment action in an additional way. A Title VII plaintiff seeking to hold her employer strictly liable for its supervisory employee's conduct must not only prove a tangible employment action, but also that it was the "culmination" of her supervisor's offensive conduct. *See Ellerth*, 524 U.S. at 765 ("No affirmative defense is available, however, when the supervisor's harassment *culminates* in a tangible employment action[.]") (emphasis added). Regardless of the theory upon which Plaintiff alleges she suffered a tangible employment action, Plaintiff has failed to articulate any causal nexus between Defendant Hartley's misconduct a tangible employment action since Plaintiff resigned voluntarily, admitting she had failed to meet the job's objective requirements.

For the reasons set forth above, Plaintiff is not entitled to subject Defendant County to strict vicarious liability for Defendant Hartley's sexual harassment. The court therefore moves to the second issue raised by Defendant County's motion: its assertion of the *Ellerth/Faragher* affirmative defense.

### B.  *ELLERTH/FARAGHER* DEFENSE

Despite the court's finding that Plaintiff suffered no tangible employment action as a result of Defendant Hartley's sexual harassment, Defendant County may still be held liable for its

---

[7] This rule is subject to an important exception for cases that involve allegations of constructive discharge. At oral argument, Plaintiff's counsel attempted to argue for the first time that Plaintiff was constructively discharged. When pressed on the issue, however, counsel agreed that Plaintiff had no factual basis upon which to base this argument. The court therefore does not address this issue.

supervisory employee's misconduct under the *Ellerth/Faragher* framework unless it can prove by the preponderance of the evidence "(a) that the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior, and (b) that the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise." *Pinkerton*, 563 F.3d at 1061 (internal citation omitted); *see also Mallinson-Montague*, 224 F.3d at 1228 (citing *Faragher*, 524 U.S. at 807–08). The court concludes that Plaintiff has failed to identify and dispute any material facts in response to Defendant County's evidence that it has established both prongs of this affirmative defense, thereby entitling it to judgment as a matter of law on Plaintiff's two Title VII claims.

### i.   *Reasonable Care*

Under the first prong of its affirmative defense, Defendant County must do more than demonstrate that it responded to a report of sexual harassment. "Employer responses must also meet minimal standards of quality that reflect the preventive purpose of Title VII and the *Faragher/Ellerth* defense." *Kramer*, 743 F.3d at 747. The County may do so by demonstrating that it took "reasonable care to *prevent* sexually harassing behavior" and "also to *correct* promptly any such behavior." *Pinkerton*, 563 F.3d at 1062 (citing *Ellerth*, 524 U.S. at 765; *Faragher*, 524 U.S. at 807) (emphasis added). The court addresses these two sub-issues in turn.

### a. Prevention

The prevention requirement of an employer's duty to act with reasonable care recognizes "that the existence of a valid sexual harassment policy is an important consideration in determining whether an employer acted reasonably to prevent sexual harassment." *Helm*, 656 F.3d at 1288 (citing *Pinkerton*, 563 F.3d at 1062). The policy itself must be written to demonstrate "reasonable care to avoid harassment and eliminate it when it might occur[.]" *Faragher*, 524 U.S. at 805.

However, "mere promulgation of a sexual harassment policy that is reasonable on its face does not constitute an adequate preventative measure; the employer must also disseminate the policy." *Id.* (citing *Agusty-Reyes v. Dep't of Educ.*, 601 F.3d 45, 55 (1st Cir. 2010) ("[T]here is no evidence that the DOE made the slightest effort to communicate its policy . . . to any of its employees, let alone to its regional directors, its supervisors, or [the plaintiff].")). An employer can meet its obligation to act with reasonable care to prevent sexual harassment by distributing a reasonable sexual harassment policy to all employees, requiring employees to acknowledge their receipt of the policy, and providing management-level employees with training regarding the policy. *See Helm*, 656 F.3d at 1288; *see also Anderson v. Wintco, Inc.*, 314 Fed. App'x 135, 139 (10th Cir. 2009) (unpublished) ("[D]istribution of a valid antiharassment policy provides compelling proof that [an employer] exercised reasonable care in preventing . . . sexual harassment.") (internal quotation marks omitted).

Plaintiff argues that "the County failed with respect to preventing the harassing behavior in the first place." ECF No. 47, at 17. And it is undisputed that harassment occurred. Yet Plaintiff cites no authority to suggest that Defendant County would be liable for Defendant Hartley's misconduct based solely on the fact that harassment occurred. Fortunately for the County, that is not what the *Ellerth/Faragher* defense requires. Defendant County was required only to act with reasonable care to prevent sexual harassment by its supervisory employees. And Defendant County did so—despite the alleged occurrence of Defendant Hartley's harassment.

Both Defendant County and its Sheriff's Office have written sexual harassment policies, which each contain rules prohibiting harassment in the workplace, detail the procedures that an employee who is subject to harassment should follow, and list individuals to whom employees may report sexual harassment. *See* ECF Nos. 36-8, 36-9. The County also established an online

portal through which employees could report sexual harassment in lieu of directly speaking with any of the designated personnel to whom harassment could be reported. ECF No. 38, ¶ 4. Defendant County disseminates both policies to all of its Sheriff Office employees. *Id.* Defendant County also makes its sexual harassment policy publicly available on its website, and Sheriff's Office employees can access that Office's supplemental policy through the office's intranet. *Id.*; *see also* ECF No. 36, ¶ 20.

It is undisputed that Plaintiff signed a form acknowledging her receipt of and agreement to the Sheriff's Office Academy Rules and Regulations, including that Office's sexual harassment policy, within her first week of employment. ECF No. 36-10. It is also undisputed that Defendant County's sexual harassment policy is disseminated to all employees (including Plaintiff), who also complete specialized training on that policy and how to recognize, prevent, and report sexual harassment.[8] ECF No. 47, at 10. Plaintiff completed this specialized training on June 29, 2021, eight weeks after she entered the Sheriff's Office Academy. ECF Nos. 36, ¶ 21; 38, ¶¶ 6–7. Plaintiff's sole contention that Defendant County failed to act with reasonable care to prevent sexual harassment is that Plaintiff did not personally receive this specialized training until two days after Defendant Hartley was placed on administrative leave. *See* ECF No. 47-1, ¶ 11. This fact is undisputed, but it is also immaterial to the issue at hand. As the Tenth Circuit stated in *Helm*, "the [County] could have made a stronger effort to disseminate its sexual harassment policy by providing training to non-management employees . . . [but] the relevant question 'is not whether any additional steps or measures would have been reasonable if employed, but whether the employer's actions as a whole establish a reasonable mechanism for prevention.'" *Helm*, 656 F.3d

---

[8] As Defendant County notes, Plaintiff did not dispute that "[a]ll County employees receive specialized training on the County's sexual harassment policy and how to recognize, prevent, and report sexual harassment." ECF No. 47, at 10. Her admission of this fact undercuts her argument that "it is unclear" what sexual harassment training Defendant Hartley received. *See id.*, at 17.

at 1289–90 (quoting *Holly D.*, 339 F.3d at 1177). Defendant County satisfied this requirement.

While the County conceivably could have done more to prevent Defendant Hartley's harassment of Plaintiff and other female employees within the Sheriff's Office, the fact remains that Defendant County and its Sheriff's Office also had reasonable and effective mechanisms in place to prevent harassment. As in *Helm*, Defendant County and its Sheriff's Office each have established a sexual harassment policy, which they disseminate to all employees, requiring employees to acknowledge in writing their receipt thereof. Defendant County also provides all employees with specialized sexual harassment training, which the Tenth Circuit specifically found was not required to conclude that an employer reasonably acted to prevent harassment in the workplace. The fact that Plaintiff did not receive this training until eight weeks into her Academy training, and until two days after Defendant Hartley was placed on administrative leave, is therefore immaterial to the court's conclusion that Defendant County acted reasonably to prevent sexual harassment.

### b. Correction

In addition to reasonably acting to prevent sexual harassment, an employer claiming the *Ellerth/Faragher* defense is obliged to investigate and correct behavior of which the employer receives proper notice through its harassment complaint procedures. *Stapp v. Curry Cnty. Bd. of County Comm'rs*, 672 Fed. App'x 841, 849 (10th Cir. 2016) (unpublished). Corrective action must be "reasonably calculated to end the harassment, deter future harassers, [and] protect [the plaintiff.]" *Kramer*, 743 F.3d at 747. In *Pinkerton*, the Tenth Circuit found that an employer met this duty by immediately investigating a report of sexual harassment, promptly removing the harassing supervisor from any workplace interaction with the employee when that report was found to be credible, and demoting, reassigning, or removing the supervisor after a thorough

investigation sustained the employee's allegations. *Pinkerton*, 563 F.3d at 1062. In *Kramer*, by contrast, remedial efforts by the employer were insufficient to establish an affirmative defense when the employer assigned the investigation to a detective "because he was the unfortunate guy that was on-duty[,]" despite the fact that the detective had no specific training on how to conduct a sexual harassment investigation and had a close personal relationship with the complained-of supervisor. 743 F.3d at 747–48. The present case is much more like *Pinkerton* in that the Defendant County acted to promptly investigate and remedy the situation after receiving reports of Defendant Hartley's misconduct.

The undisputed facts raise no issue regarding the corrective measures taken by Defendant County upon learning of Defendant Hartley's alleged workplace misconduct. When one Sheriff's Office Sergeant reported to his Lieutenant that he overheard female deputies discussing "potentially inappropriate contact from Defendant Hartley[,]" the Lieutenant immediately placed Defendant Hartley on administrative leave and opened an internal affairs investigation. ECF No. 37, ¶¶ 2–3. In the course of the investigation, the County interviewed Plaintiff, during which she disclosed for the first time that she had a sexual relationship with Defendant Hartley. ECF No. 35-1, at 12. In total, Plaintiff had three interviews with Defendant County's internal affairs investigators, and she informed those investigators that her relationship with Defendant Hartley was at least initially consensual. *Id.* Before the internal affairs investigation was completed, Defendant Hartley resigned in lieu of termination. ECF No. 36, ¶ 16. Despite his resignation, Defendant County completed the investigation, sustaining the allegations against Defendant Hartley brought by Plaintiff and other female employees. *Id.*, ¶ 18. And the County's Human Resources Division Administrator has testified that Defendant Hartley would have been terminated had he not resigned. *Id.*, ¶ 17.

Plaintiff's only response to the foregoing facts is "that Defendant County allowed Defendant Hartley's resignation in lieu of termination." ECF No. 47-1, ¶ 8. But Plaintiff fails to articulate why she believes this fact to be material (or even relevant) to the issue at hand. Plaintiff makes no other argument as to why she believes Defendant County failed to reasonably act to correct Defendant Hartley's sexual harassment. Even viewed in the most favorable light, the closest Plaintiff comes to making any argument as to a deficiency in Defendant County's conduct is her conclusory allegation, made "upon information and belief," that "Defendant County knew of the abuse suffered by Plaintiff" prior to the date on which Defendant Hartley was placed on administrative leave. ECF No. 47, at 6. But Plaintiff offers no evidence supporting this allegation, and at the summary judgment stage, the court cannot infer from this conclusory allegation that there was some corrective action that Defendant County could have or should have taken. Moreover, the actual evidence in the record contradicts Plaintiff's allegation. *See* ECF No. 36, ¶ 15 ("Prior to that interview, the County had no knowledge of Plaintiff's and Defendant Hartley's relationship."). The courts finds that the County acted reasonably to both prevent and correct harassment and therefore proceeds to the second prong of the County's *Ellerth/Faragher* defense.

### ii.      *Unreasonably Failed to Take Advantage*

The second prong of the *Ellerth/Faragher* affirmative defense directs the court to determine whether Defendant County has established that Plaintiff "unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise." *Pinkerton*, 563 F.3d at 1061 (internal citation omitted). "An employer may satisfy th[is] second element . . . by showing that the victimized employee unreasonably delayed in reporting incidents of sexual harassment." *Helm*, 656 F.3d at 1291 (citing *Pinkerton*, 563 F.3d at 1063 (holding that an unexplained delay of two or two and a half months was unreasonable). In

*Helm*, the employer met its burden by showing that the victimized employee had constructive knowledge of her employer's sexual harassment policy, and yet unreasonably waited a period longer than two months to report her supervisor's harassing behavior. *Id.*, at 1291–92. The same is true here. Plaintiff had at least constructive knowledge of the Sheriff's Office's sexual harassment policy when she signed a form acknowledging her receipt of and agreement to that policy's requirements within her first week of employment. ECF No. 36-10. Yet she delayed in reporting Defendant Hartley's harassment for two months, and only informed Defendant County of his misconduct when he had already been placed on administrative leave for other possible misconduct. ECF No. 36, ¶¶ 14–15. Plaintiff argues that the court should excuse her failure to report Defendant Hartley's misconduct primarily because she "felt uncomfortable, nor was she able, to report the abusive behavior to any of the [policy's] designated individuals[.]" ECF No. 47, at 11. But Plaintiff's contention fails to explain her failure to report her harassment through the County's online reporting portal and does not address the fact that the County's sexual harassment policy offered six different individuals to whom she could report sexual harassment, including multiple designated individuals outside of the County Sheriff's Office. Moreover, the Tenth Circuit has explicitly addressed the issue of a plaintiff's fear of retaliation in reporting sexual harassment, finding it insufficient to remove an employee's duty to take reasonable advantage of preventive or corrective opportunities provided by the employer. *See Pinkerton*, 563 F.3d at 1063 ("It is undeniable that raising problems regarding sexual harassment can be uncomfortable for the employee, but if we were to allow an employee's subjective, ungrounded fears of unpleasantness or retaliation to alleviate an employee's reporting requirement, we would 'completely undermine Title VII's basic policy of encouraging forethought by employers and saving action by objecting employees.'") (quoting *Barrett v. Applied Radiant Energy Corp.*, 240 F.3d 262, 268 (4th Cir.

2001)). A victim of sexual harassment or abuse may have any number of reasons to hesitate to complain of her treatment. While the requirement that Plaintiff take that step does not wholly foreclose her ability to achieve a remedy for harassment in federal court, it does open the door for the County's assertion of an affirmative defense as to its vicarious liability, as is the case here.

## II.    RETALIATION

Defendant County also moves for summary judgment on Plaintiff's Title VII retaliation claim. This portion of the County's motion is unopposed. However, "a party's failure to file a response to a summary judgment motion is not, by itself, a sufficient basis on which to enter judgment against the party." *Reed v. Nellcor Puritan Bennett*, 312 F.3d 1190, 1195 (10th Cir. 2002). Instead, summary judgment is only appropriate if the movant met its burden to demonstrate the absence of any genuine dispute as to a material fact and that it is entitled to judgment as a matter of law. *Id.*; *see also United States v. Valencia*, No. 2:22-CV-00238-RJS-DPB, 2022 U.S. Dist. LEXIS 230944, at *7 (D. Utah Dec. 22, 2022) ("In considering an unopposed motion for summary judgment, the court must examin[e] the moving party's submission to determine if it has met its initial burden of demonstrating that no material issues of fact remain for trial and the moving party is entitled to judgment as a matter of law.") (internal quotation marks omitted).

Plaintiff's Title VII retaliation claim requires her to prove three elements: (1) "she engaged in protected opposition to discrimination;" (2) "a reasonable employee would have found the challenged action materially adverse;" and (3) "a causal connection exists between the protected activity and the materially adverse action." *McGowan v. City of Eufala*, 472 F.3d 736, 741 (10th Cir. 2006) (citing *Argo v. Blue Cross & Blue Shield of Kan., Inc.*, 452 F.3d 1193, 1202 (10th Cir. 2006)).

As Defendant County rightly notes, the factual allegations supporting Plaintiff's retaliation

claim against the County fail at the starting line. Plaintiff's complaint alleges that "Defendants illegally retaliated against Plaintiff by subjecting Plaintiff to unjust discipline, suspending and demoting Plaintiff solely because she had reported sexual harassment and abuse by her supervisor." ECF No. 1-1, at 15. But the undisputed evidence before the court completely dispels that notion. Plaintiff was not suspended and demoted because she reported Defendant Hartley's sexual harassment—she chose not to report Defendant Hartley's harassment until after he had been placed on administrative leave for other potential misconduct, and she was demoted from Deputy II to Deputy I, and later reassigned to a civilian position, because of her own admitted inability to meet the objective job requirements for those positions.

Even when viewed in the light most favorable to Plaintiff, her retaliation claim fails as a matter of law. The court assumes, without deciding, that Plaintiff's disclosure of her initially consensual (and later harassing and abusive) relationship with Defendant Hartley during the internal affairs investigation constitutes a "protected activity" for Title VII purposes. Yet Plaintiff still cannot survive Defendant County's motion. First, Plaintiff's claim necessarily fails because she did not suffer a materially adverse employment action. Instead, the undisputed evidence demonstrates that Plaintiff voluntarily resigned from the Sheriff's Office, electing to instead obtain a civilian position in county employment. ECF No. 36, ¶ 12. And even if she had been terminated, the outcome would be the same, because her resignation (or hypothetical termination) was the direct consequence of her inability to meet the objective job requirements of a Deputy II or Deputy I role within the Sheriff's Office. Therein lies the second reason why Plaintiff's retaliation claim fails as a matter of law: the uncontroverted evidence in the record demonstrates a complete lack of any causal connection between her alleged "protected activity" and the "materially adverse action" of her voluntary resignation.

Viewing the evidence in the light most favorable to the Plaintiff, the court concludes that her Title VII retaliation claim against Defendant County fails as a matter of law. As a result, the court grants Defendant County's unopposed summary judgment motion as to this claim.

**ORDER**

For the reasons stated herein, Defendant County's Motion for Partial Summary Judgment (ECF No. 35) is **GRANTED**.

Signed January 30, 2024

BY THE COURT

Jill N. Parrish
United States District Court Judge